**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **EDWIN EARL KIMBRELL, #429359,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:02-CV-279-BH** |
| | § | |
| **M.B. Thaler,** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the parties' consent to trial by magistrate judge and the *Order* of the District

Court entered June 29, 2004, this matter has been transferred to this Court for the conduct of all

further proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c).

Before the Court are the following pleadings:

(1) *Defendants Carroll, Edwards, McAfee, Mooneyham, Potter, Wagner, Wathen, Escalera and Thaler's Motion for Summary Judgment*, filed August 27, 2004 ("MSJ");

(2) *Brief in Support of Defendants' Motion for Summary Judgment*, filed August 27, 2004 ("MSJ Br.);

(3) *Defendants' Supplement to Their Motion for Summary Judgment*, filed September 28, 2004 ("MSJ Supp.");

(4) *Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment*, filed October 15, 2004 ("Resp.");

(5) *Appendix to Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment*, filed October 15, 2004 ("Resp. App.");

(6) *Defendants' Reply to Plaintiff's Response to Their Motion for Summary Judgment*, filed October 22, 2004 ("Reply");

(7) *Plaintiff's [Second] Brief in Response to Defendants' Motion for Summary Judgment*, filed November 18, 2004 ("Pl.'s Second Resp.");

(8)     *Defendants' Reply to Plaintiff's Second Response to Their Motion for Summary Judgment*, filed December 8, 2004 ("Second Reply"); and

(9)     *Plaintiff's Request for Hearing for Argument on Defendant's Motion for Summary Judgment*, filed May 3, 2005.

Having reviewed the pertinent pleadings and the evidence submitted therewith, the Court finds that oral argument would not assist in the determination of the issues, and that *Defendants Carroll, Edwards, McAfee, Mooneyham, Potter, Wagner, Wathen, Escalera and Thaler's*[1] *Motion for Summary Judgment* should be **GRANTED,** in part, and **DENIED**, in part.

## I.   BACKGROUND

Edwin Earl Kimbrell ("Plaintiff"), a *pro se* litigant and inmate confined in the Allred Unit of the Texas Department of Criminal Justice - Institutional Division ("TDCJ-ID") in Iowa Park, Texas, filed this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff sues TDCJ employees M.B. Thaler, James D. Mooneyham, Richard E. Wathen, David E. Potter, M.D., Harry Edwards, Mary Wagner, Patricia McAfee, Anne Escalera, Tina L. Carroll, Diana Burgess, Carol Cardenas, Kimberly McKay and Candace Tucker ("Defendants").[2]  M.B. Thaler, Chairman of the State Classification Committee for inmates confined by the TDCJ, is located in Huntsville, Texas.  All other Defendants are stationed at the Allred Unit of the TDCJ in Iowa Park, Texas.

Plaintiff, a 67 year old inmate, claims that Defendants denied him proper medical care and subjected him to other forms of cruel and unusual punishment.  (Compl. at ¶ V; Pl.'s  Mem. Br. in Supp. of Attached Compl. ("Compl. Mem.").)  Specifically, Plaintiff claims: (1) he has consistently

---

[1] At a hearing held on September 29, 2004, Defendants Burgess, Cardenas, Gonzales, McKay and Tucker moved to join in the motion for summary judgment.  Plaintiff did not object to the motion, and it was granted.  *See Order filed September 30, 2004 (Doc #84).*

[2] Christine Cervantes was dismissed as a Defendant in this action by order filed September 29, 2004.  Christine Gonzales was dismissed as a defendant by order filed March 31, 2005.

been denied medication prescribed to him for treatment of serious cardiovascular disease; (2) he has been denied timely access to competent medical personnel; (3) he has been denied adequate clothing during winter months; (4) Defendants have failed to maintain adequate medical records and have destroyed portions of Plaintiff's medical record; (5) he has been denied a medically safe means of transportation; (6) he has been denied implementation of proper procedures for handling potential prison medical emergencies; (7) he has been denied proper shower ventilation; and (8) he has been subjected to pepper spray, which endangers his health.  (Compl. at ¶ V; Compl. Mem. at 5, 14.) Plaintiff sues Defendants in their official and individual capacities and seeks monetary damages and injunctive relief.  (Compl. at ¶ VI; Compl. Mem. at 5.)  Defendants move for summary judgment on the grounds that Plaintiff lacks standing to bring his claims because he cannot show injury, he has not demonstrated deliberate indifference on the part of Defendants, he has made no allegations of personal involvement by certain Defendants, Defendants are entitled to qualified immunity, and Defendants are entitled to Eleventh Amendment immunity.  (MSJ Br.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(c).   "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings,

depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the pleadings of a plaintiff who is proceeding *pro se* must be liberally construed in his favor. *See Hurd v. Doe*, 2003 WL 21640569, *3 (N.D. Tex. July 10, 2003). However, under Rule 56 of the Federal Rules of Civil Procedure, the court does not have an obligation to "'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Crane v. Bowles*, 2004 WL 1057771, at *1 (N.D. Tex. May 6, 2004) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Instead, "the party opposing summary

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

## III.   ANALYSIS

### A.   *Standing*

Defendants assert that because Plaintiff has provided no evidence of actual harm resulting from the delay in medical care, the conditions of administrative segregation, or the improper shower ventilation, he lacks standing to sue for violations of the Eighth Amendment.  (MSJ Br. at 8.)

A party invoking federal jurisdiction bears the burden of establishing three elements to show standing: (1) "the plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical;'" (2) "there must be a causal connection between the injury and the conduct complained of-- the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court;'" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

The question of standing is jurisdictional, and may be raised at any time.  *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  When the question of standing is raised at the summary judgment stage, the plaintiff cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts evidencing standing.  *Lujan*, 504 U.S. at 561.  It is the burden of the party invoking federal jurisdiction to clearly allege facts demonstrating that he is a proper party to invoke

5

judicial resolution of the dispute. *Johnson v. City of Dallas*, 61 F.3d 442, 444 (5th Cir. 1995).

## 1.     **Injury in Fact**

Defendants claim that Plaintiff is unable to prove the first prong of the standing test because Defendant cannot show actual harm attributable to Defendants' alleged actions. (MSJ Br. at 8.)

The requirement of actual harm was previously addressed by the Supreme Court in *Helling v. McKinney*, 509 U.S. 25 (1993), wherein a prisoner claimed deliberate indifference to his medical needs was a violation of the Eighth Amendment. Prison officials argued that unless the plaintiff could prove that he was currently suffering serious medical problems caused by indifference to his medical needs, there could be no violation of the Eighth Amendment. *Helling*, 509 U.S. at 32-33. The court noted that it had "great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Id*. at 33. The court also noted its prior holding in *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982), that it is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Id.* The Supreme Court held that the plaintiff in *Helling* did state a cause of action under the Eighth Amendment by alleging that the defendants had, with deliberate indifference, exposed him to an unreasonable risk of serious damage to his future health. *Id.* at 34.

In this case, Plaintiff has provided evidence that he suffers from a serious medical condition requiring ongoing treatment. (Compl. Mem. at 2-4; Resp. App. Exh. I.) Defendants do not controvert Plaintiff's claim that a delay in receipt of medication or prompt medical treatment could cause him serious injury or death, and they concede that there were times when Plaintiff ran out of prescribed medication. (MSJ Br. at 8). Plaintiff supports his response to the instant motion with an

affidavit wherein he claims that Defendants were deliberately indifferent to an unreasonable risk of serious damage to his future health.  (Resp. Appx. Exh. I.)  Plaintiff's affidavit indicates that he is in imminent danger if the current situation is not rectified.  *Id.*  The fact that he has not provided evidence of actual injury to date resulting from Defendants' actions is not dispositive of his claims. Plaintiff has satisfied the first prong of the standing analysis because he complains of an invasion of a legally protected interest and imminent harm.

### 2. __Causal Connection__

Defendants do not argue that there is no causal connection between the alleged injury and the alleged conduct of Defendants.  The Court notes that Plaintiff clearly alleges that each Defendant was indifferent to Plaintiff's medical needs and contributed to the deprivation of his constitutional rights. (Resp. Br. at 8-9; Resp. App. Exh. I.)  Accordingly, the Court finds that Plaintiff has satisfied the second prong of the standing analysis.

### 3. __Redress__

Defendants do not claim that the relief requested by Plaintiff will not redress the harm claimed in his complaint.  In addition to monetary damages, Plaintiff requests injunctive relief sufficient to correct the alleged ongoing deprivation of his constitutional rights.  (Comp. Mem. at 20.)  The Court concludes that the alleged injury asserted by Plaintiff can be redressed by a favorable decision in this case.  Plaintiff has met his burden of showing that he has standing to bring the instant action.  Therefore, Defendants' motion for summary judgment on the basis of lack of standing is denied.

**B.     *Eleventh Amendment Immunity***

Defendants assert that they are entitled to summary judgment on Plaintiff's claims against them in their official capacities[3] on the basis of Eleventh Amendment immunity.  (MSJ Br. at 15.)  In his complaint, Plaintiff seeks both monetary and injunctive relief.  (Compl. at 4.)

**1.     <u>Monetary Relief</u>**

Eleventh Amendment immunity bars a suit in federal court by a citizen of a state against his own state or against a state agency or department.  *See Hughes v. Savell*, 902 F .2d 376, 377-78 (5th Cir. 1990) (citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 (1984)).  "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such it is no different from a suit against the state itself."  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  Eleventh Amendment immunity extends to suits for monetary damages against state officials in their official capacity.  *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n.10 (2001) ("Only States and state officers acting in their official capacity are immune from suits for damages in federal court.").  There is, however, an exception to Eleventh Amendment immunity that was created by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), which permits a suit for prospective injunctive relief against state officials for violations of federal or Constitutional law.

Defendants are employees of the TDCJ-ID.  (MSJ Br. at 1.)  Accordingly, Plaintiff's claims against Defendants in their official capacities are treated as claims brought against the state agency which employees them, the TDCJ-ID.  As noted above, Eleventh Amendment immunity bars § 1983

---

[3]Plaintiff sues the named defendants in both their official and individual capacities.  (Pl.'s Mem. at 5.)

8

claims against a state official in his official capacity for the recovery of monetary damages.  *See Rogers v. Morales*, 975 F. Supp. 856, 857 (N.D. Tex. 1997) ("The Eleventh Amendment of the U.S. Constitution grants to the states the bar to a Civil Rights case when the lawsuit is brought against a state agency, or a state official in his official capacity for the recovery of monetary damages"); *see also Gaines v. Texas Tech University*, 965 F. Supp. 886, 889 n.4 (N.D. Tex. 1997) ("Suits against state officials in their official capacity are considered to be suits against the individual's office, and so are generally barred as suits against the state itself.").  Additionally, it is well settled that the Eleventh Amendment cloaks State instrumentalities such as the TDCJ-ID with immunity from suits for monetary damages.  *See Aguilar v. Texas Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).  Consequently, Plaintiff's request for monetary damages against Defendants in their official capacity is barred by the Eleventh Amendment.  *See Rogers*, 975 F. Supp. at 857; *Gaines*, 965 F. Supp. at 889; *see also Pennhurst*, 465 U.S. at 100.

Accordingly, the Court dismisses Plaintiff's claims for monetary damages against Defendants in their official capacity for lack of subject matter jurisdiction under Rule 12(b)(1) and Rule 12(h)(3).  *See Warnock*, 88 F.3d at 342-43 (remanding grant of summary judgment because "the proper course of action for the district court would have been to treat the motion for summary judgment on the Eleventh Amendment immunity issue as a motion for dismissal for lack of subject matter jurisdiction").

### 2. <u>Equitable Relief</u>

Plaintiff also requests "injunctive relief sufficient to correct the acts and omissions complained of ... and a declaratory judgement directing [Defendants] to refrain from the constitutional violations set forth in Plaintiff's complaint."  (Compl. Mem. at 21.)

Under Eleventh Amendment jurisprudence, a federal court may not grant equitable relief against a state official with regard to the legality of past conduct. *See Green v. Mansour*, 474 U.S. 64, 73 (1985). However, the Eleventh Amendment does not bar claims for prospective equitable relief based on alleged unconstitutional actions of state officials. *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988) (discussing equitable relief under Eleventh Amendment). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Defendants' motion does not request summary judgment on Plaintiff's claims for equitable relief made against them in their official capacities. Defendants do not address the issue of whether Plaintiff's complaint alleges ongoing violations of federal law or whether it seeks relief properly characterized as prospective. Because Defendants have not sought summary judgment on Plaintiff's claims for equitable relief, these claims remain for determination at trial.

## C. *Qualified Immunity*

Defendants assert that they are entitled to summary judgment on the basis of qualified immunity on Plaintiff's claims against them in their individual capacities for denial of medical care, the conditions of administrative segregation, and improper shower ventilation. (MSJ Br. at 14.) They allege that Plaintiff has not alleged a violation of federal law because he can not show that Defendants were deliberately indifferent to his constitutional rights. (MSJ. Br. at 8-13.)

10

1.      **Standards**

a.      **Qualified Immunity**

A state official who is sued for a constitutional violation pursuant to § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The law is deemed to be clearly established if the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *White*, 959 F.3d at 544. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question. *White*, 959 F.3d at 544.

To determine whether Defendants are entitled to qualified immunity, the threshold question is whether, on the facts alleged by Plaintiff, a clearly established constitutional right would have been violated. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Assuming the facts alleged by Plaintiff are true, if Defendants did not violate a constitutional right, the Court need inquire no further. *Id.* at 201. If Plaintiff can show that his constitutional rights were violated, the Court must then determine whether Defendants' conduct was objectively reasonable in light of clearly established law at the time of the challenged conduct. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). "Even if an official's conduct violates a constitutional right, he is entitled to

qualified immunity if the conduct was objectively reasonable." *McClendon v. City of Columbia*, 258 F.3d 432, 438 (5th Cir. 2001).

### b.   Eighth Amendment Violation

Plaintiff's complaint alleges that Defendants violated the Eighth Amendment by denying him medical care and creating conditions of confinement which endanger his health.  (Compl. at 4.) Therefore, the threshold question in the qualified immunity analysis here is whether, assuming the facts alleged by Plaintiff are true, Defendants' conduct violated the Eighth Amendment.  In order to state a colorable claim for the denial of medical care under the Eighth Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "In order to establish an Eighth Amendment conditions of confinement claim, [an inmate] would have to establish 'first, that the deprivation alleged was sufficiently serious (i.e., an official's act or omission must have resulted in the denial of the minimal civilized measure of life's necessities); and second, that the prison official possessed a sufficiently culpable state of mind.'" *Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004) (internal citations omitted).

To establish that the official possessed the requisite state of mind, the inmate must show that he was deliberately indifferent to the inmate's health or safety in that the official (1) was "aware of the facts from which an inference of excessive risk to the prisoner's health or safety could be drawn," and (2) "actually drew an inference that such potential for harm existed." *Id.  See also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (noting that deliberate indifference under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996)

(same).  A prison official may be "deliberately indifferent" so as to give rise to a § 1983 civil rights action if the official intentionally denies or delays a prisoner's access to medical care.  *See e.g. Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Harris*, 198 F.3d at 159.  "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (*quoting Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994)).  However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim.  *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993).  As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights.  *See Youngberg v. Romeo*, 457 U.S. 307, 322- 23 (1982).  A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice more appropriately addressed under state law.  *See Estelle*, 429 U.S. at 107-08; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

### 2.    <u>Qualified Immunity/Eighth Amendment Analysis</u>

In this case, Defendants did not argue in their summary judgment motion that the alleged deprivation was not sufficiently serious.  Because Defendants do not contest the first prong of the Eighth Amendment inquiry into qualified immunity, the Court proceeds to the second prong and determines whether Plaintiff has provided sufficient evidence to create a genuine issue of material fact regarding whether Defendants were deliberately indifferent to Plaintiff's health and safety.  *See Estate of Davis v. City of North Richland Hills*, – F.3d –, 2005 WL 827129, *3 (5th Cir. Apr. 11,

2005) (noting that once qualified immunity is raised, the plaintiff has the burden to rebut the defense).

### a.   Denial of Prescribed Medication

Defendants assert that they are entitled to qualified immunity on Plaintiff's claim for denial of medical care because the delay in distribution of Plaintiff's medication did not constitute deliberate indifference to his health needs.  (MSJ Br. at 10.)  Plaintiff claims that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by "consistently [denying] medication that is prescribed for treatment of a serious cardiovascular disease." (Compl. at 4.)  He claims that Defendants either denied him prescribed medications or issued the medications in such a sporadic manner as to as to create an unnecessary risk to his life.  (Compl. Mem. at 5.)  Plaintiff claims that Defendants were deliberately indifferent to the potential adverse consequences of the delay in his medication.

There is no dispute that Plaintiff has a history of cardiovascular disease and associated complications.  He suffered heart attacks in 1987, 1993, and 2000, and has undergone several surgical procedures, including five-vessel bypass surgery in 1987, angioplasty in 1993, and four-vessel bypass surgery in 1993.  (Compl. Mem. at 2-3.)  At the time he filed this action, Plaintiff was using seven different medications prescribed for treatment of cardiovascular disease.  *Id.* at 3-4.  Defendants concede that there were multiple times when, as he claims, Plaintiff ran out of prescribed medication.  (MSJ Br. at 8.)

In support of their motion for summary judgment, Defendants provided the affidavit of Kimberly McKay, the charge nurse of administrative segregation at the Allred Unit where Plaintiff is confined.  (MSJ Supp., Exh. C.)  McKay stated that she was aware that Plaintiff had often

complained of running out of his "keep on person" medications.  She stated that some delays occurred because Plaintiff failed to tell medical care personnel when he ran out of medicine and because he failed to ask personnel to bring him needed medication during rounds that are made twice a day by medical aides.  *Id.* at 2.  Additionally, states McKay, Plaintiff could notify prison officials that he needed medication by submitting a sick call request, by notifying the nurses who made rounds three times a week or by telling an officer who is constantly patrolling the housing area.  *Id.*  McKay asserts that "nurses make rounds three times a week and go to every cell to give offenders the opportunity to tell them if they have any medical issue.  Every medical complaint made during these rounds is noted and addressed."  *Id.* at 1.  McKay states that Plaintiff "has never had medicine intentionally kept from him" and she suggested that, if Plaintiff were to take a more active role in his healthcare by notifying medical care personnel when he is low on medication, he could have medication refills available whenever his supply runs out.  *Id.* at 2-3.  McKay states that "[w]e always have medication available for delivery to the cell, even though we sometimes do not have 'keep on person' packets available for short time periods."  *Id.* at 2.  However, McKay admits that "there have been occasions where [Plaintiff] has not had his medications, but these occasions have been brief, quickly corrected, and accidental."  *Id.* at 3.  McKay notes that Plaintiff has "never actually had a bad result from not having medicine."  *Id.*

Defendants also submitted the affidavit of David Potter, D.O., who states that nurses make rounds three times a week in administrative segregation to see if inmates have any medical issues.  (MSJ Br., Exh. B.)

In his response, Plaintiff states that it is common knowledge and a clearly established medical opinion that cardiovascular medications must be taken as prescribed or serious

complications can occur. (Resp. at 5-6.) He states that his record of grievances demonstrates that he repeatedly alerted officials that he was not receiving his medications. *Id.* at 6. The record indicates that between January 12, 2001 and March 13, 2004, Plaintiff filed numerous grievances complaining that he was not receiving his medication as prescribed. (MSJ. Br., Exh. D.) Each grievance was investigated, and Plaintiff eventually received his medications. *Id.* Plaintiff argues that each defendant was aware of his medical condition, that he was prescribed medication necessary to his condition, and that he was not receiving his medication. *Id.* at 7. In support of his arguments, Plaintiff provided the Court with an affidavit stating that, on the majority of the occasions when he did not receive his medications, it was because the nurse or medical aide delivering medicine to inmates "neglected" to include his medication for delivery as they made their rounds, and that they were deliberately indifferent because they refused to make an additional trip to bring his medication to him. (Resp. App., Exh. I at 1, 2.) In a separate affidavit, Plaintiff states that "[d]uring the fifty-four months I have been confined in segregation on the James V. Allred Unit, it has never been the practice of the Unit Health Services Division to have nurses observe inmates in segregation by going to each cell." (Resp. App., Exh. III at 3.) Plaintiff's affidavit asserts that nurses do not make rounds three times a week, but that it can be several weeks between nurse rounds. *Id.* Plaintiff also provides the affidavits of nine other inmates confined in the same facility. The affidavits are identical and state that nurses do not observe each inmate three times a week. (Resp. App., Exh. III, IV, V, VI, VII, VIII, IX.) Rather, the affidavits assert that a nurse comes to the cell block once every two weeks and does not observe each inmate in his cell. *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that the evidence presented establishes that there are genuine issues of material fact as to the deliberate

indifference allegedly demonstrated by Defendants. McKay admits that despite previous incidences, Plaintiff has continued to experience occasional lapses in medication. (MSJ Supp., Exh. C at 3.) The parties have submitted dueling affidavits on the issue of the frequency of nurse visits to Plaintiff's cell block and their accessibility to inmates. The evidence submitted raises a genuine issue as to whether Defendants knew of the risks of lapses in Plaintiff's medication and whether, in spite of such knowledge, Defendants did not take appropriate steps (i.e. regular nurse visits, timely reordering of medication) to prevent such lapses. These fact issues preclude summary judgment. Accordingly, summary judgment for Defendants on this claim is **DENIED**.

### b.   Confinement in Administrative Segregation

Defendants claim they are entitled to qualified immunity on Plaintiff's claim that the conditions of his continued confinement in administrative segregation represent a threat to his health, in violation of the Eighth Amendment. (MSJ Br. at 11-12, 14.) As noted above, "deliberate indifference" under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). Defendants point to a lack of evidence demonstrating their deliberate indifference to Plaintiff's rights. *Id.* They argue that inmates with cardiovascular disease can safely be housed in administrative segregation and that Plaintiff's allegations regarding his confinement in administrative segregation are nothing more than disagreements over the way the prison should be run. (MSJ Br. at 11, 12.)

In support of their summary judgment motion, Defendants submit the affidavit of the Assistant Warden of the Allred Unit, James Mooneyham. (MSJ Br., Exh. A.) Mooneyham states that the building in which Plaintiff is housed has its own basic medical staff and department, and that

the inmates confined in this building are able to communicate with officers by either signaling to the officer in the "control picket" by waiving from their cell window or by using the intercom system to contact the officer. *Id.* at 1-2. There are two additional officers called "rovers" assigned to each "pod" during the day and one rover per pod at night. *Id.* at 2. Mooneyham states that, in his opinion, an inmate housed in administrative segregation who had a medical emergency would likely receive attention much quicker than an inmate in the general population because administrative segregation is monitored much more closely than the general population of the prison and because inmates in administrative segregation are physically located closer to a prison medical department. *Id.* at 3.

Defendants also submit the affidavit of David Potter, D.O., who confirms that administrative segregation has its own medical infirmary, and states that an inmate with a medical emergency would be escorted to the infirmary immediately by security staff. (MSJ Br., Exh. B at 2.) Potter also opines that an inmate with a medical emergency would likely receive quicker medical attention than an inmate assigned to other areas of the prison. *Id.*

Plaintiff responds that his continued confinement in administrative segregation represents a threat to his life and is indicative of Defendants' deliberate indifference because such confinement may result in the denial of timely access to life-saving medical care. (Compl. Mem. at 11-15). In particular, Plaintiff notes that prison regulations which govern the medical treatment of prisoners with serious medical needs in administrative segregation require certain actions be taken by health care staff. (Resp. at 11-12.) He argues that Defendants have failed to implement proper procedures for handling the medical emergencies of inmates confined in administrative segregation and that,

when he has his next heart attack, he will likely die before he is found and removed from his cell for treatment. *Id.* at 13-15.

Plaintiff asserts that Defendants have not complied with their own regulations concerning care of prisoners with serious medical needs such as his in administrative segregation. (Resp. at 12.) Plaintiff claims that offenders in administrative segregation were not monitored as closely as those in general population because they are confined to their cells most of the time. (Resp. App., Exh. I at 1.) He claims that officers assigned to patrol administrative segregation were more often involved with other duties and seldom made cell checks, that more inmates have been found dead in administrative segregation than in the general population and that inmates in administrative segregation were less likely to receive prompt medical attention than those in the general population. *Id.* Plaintiff states that inmates in administrative segregation have had difficulty attracting the attention of officers because officers in the control picket did not make it a point to try and observe inmates in their cells, because security screens blocked officers' views in some instances, and because intercoms were not operational by inmates. *Id.* at 2. Plaintiff claims that, if he has a medical emergency and cannot physically get to the door of his cell to be handcuffed, prison policy dictates that a six-man response team be assembled in riot gear to remove him from his cell. (Resp. App., Exh. X at 2.) He argues that this policy is unreasonable for use in a medical emergency situation and that it will result in a delay in treatment and possibly his death.

With regard to the medical infirmary in his building, Plaintiff asserts that the facility is inadequate to treat an inmate with a serious emergency medical condition. (Second Resp., Exh I at 1.) He states that the infirmary lacks the basic medical equipment necessary to treat an inmate experiencing a cardiovascular emergency and he notes that the facility does not have "a 'crash cart,'

defibrillator, oxygen, CPR devices, or emergency first aid materials." *Id.*  Plaintiff argues that these adverse conditions in administrative segregation, as they relate to his cardiovascular disease, evidence an imminent and continuing danger to his life in violation of the Eighth Amendment.  (*See* Comp. Mem. at 4, 8-10.)

A disagreement over whether the available medical facilities or procedures are appropriate does not suffice to state a claim under the Eighth Amendment.  *See Estelle*, 429 U.S. at 107-08; *Varnado*, 920 F.2d at 321; *Fielder*, 590 F.2d at 107.  Prison officials are accorded the widest possible deference in the application of polices and practices designed to maintain security and preserve internal order.  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Moreover, prison officials' failure to follow their own regulations does not automatically entitle a prisoner to § 1983 relief.  *Hernandez, v. Estelle*, 788 F2d 1154, 1158 (5th Cir. 1986).

The evidence submitted by Defendants shows that medical care is available in the event of a medical emergency in administrative segregation.  Plaintiff's claims regarding the way that medical care is provided and might be provided in the future do not indicate deliberate indifference to his serious medical needs.  Plaintiff has provided no more than "conclusory allegations, speculation, and unsubstantiated assertions" which are insufficient to satisfy his summary judgment burden.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  Plaintiff's subjective belief that he will be left dying on the floor of his cell with no intervention from guards until a riot squad is assembled is sheer speculation on his part and, as such, is not sufficient to survive summary judgment.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (defendant must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety"); *Johnson v. Cherian*, 48 Fed. Appx. 481, 2002 WL 31049580, *1 (5th Cir. 2002) (finding a disagreement regarding the type

20

of medical care provided did not rise to the level of a constitutional violation).

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to raise a fact issue as to whether Defendants were deliberately indifferent to his serious medical needs by confining him in administrative segregation.   Therefore, the Court concludes that Defendants are entitled to qualified immunity on Plaintiff's claim that his continued confinement in administrative segregation represents a threat to his health, in violation of the Eighth Amendment.  Accordingly, summary judgment will be **GRANTED** for Defendants on this claim.

### c.    Improper Shower Ventilation

Defendants claim they are entitled to qualified immunity on Plaintiff's claim that improper shower ventilation represents a threat to his health, in violation of the Eighth Amendment.  (MSJ Br. at 12-13, 14.)  Defendants claim that the shower door slots were closed for safety reasons and that there is an absence of evidence demonstrating their deliberate indifference to Plaintiff's rights. *Id.*

In support of their motion for summary judgment, Defendants submitted the affidavit of Mooneyham, who states that the venting system of the showers functions as the building was designed.  (MSJ Brief, Exh. A at 3.)  He notes that the vents are open at all times, whether or not the showers are in use.  *Id.*  Mooneyham states that the shower vents cannot be manually closed and that, when last checked, the shower ventilation system was working properly.  *Id.*  He further states that the shower vents are connected to the building's constant air circulation system.  *Id.* Mooneyham previously ordered that the handcuff slots on the shower doors be secured when inmates shower.  *Id.*  Mooneyham asserts that the slots were ordered closed for the safety and security of prison staff.  *Id.*

In contrast, Plaintiff alleges that when the door slots are closed, the ventilation system does not operate as designed.  (Second Resp. App., Exhibit I at 3-4.)  Plaintiff complains that the exhaust vent draws noxious air from the drain/sewer grate which contains methane gas and other contaminates that make it difficult to breath and which represent a threat to his health.  (Compl. Mem. at 10-11.)  He also complains that with the handcuff slot closed, he cannot communicate with anyone outside the shower which represents a danger in the event of a medical emergency.  (Second Resp. App., Exhibit I at 3-4.)   He states that other TDCJ units have recognized the health hazard and installed metal screens to provide ventilation.  *Id.* at 4.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to point to a fact issue as to his claim that improper shower ventilation demonstrates Defendants' deliberate indifferent to his serious medical needs.   The evidence submitted by Defendants establishes that the ventilation system is functioning properly and that the handcuff slots are not an integral part of the ventilation system.  Additionally, the slots were ordered closed for safety reasons.   Prison officials are accorded the widest possible deference in the application of polices and practices designed to maintain security and preserve internal order.  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Plaintiff's complaint pertains to the design of the shower ventilation system and appears to argue that the handcuff slot serves as an important part of the ventilation system and should remain open.  However, Plaintiff's claim is unsupported by evidence other than "conclusory allegations, speculation, and unsubstantiated assertions," which are insufficient to satisfy his summary judgment burden.   *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  Plaintiff's subjective belief that he will be unable to communicate with guards in the event of a

medical emergency is sheer speculation and, as such, is not sufficient to survive summary judgment. *See Farmer*, 511 U.S. at 837.   Therefore, the Court concludes that Defendants are entitled to qualified immunity on Plaintiff's claim that improper shower ventilation represents a threat to his health, in violation of the Eighth Amendment.   Accordingly, summary judgment will be **GRANTED** for Defendants on this claim.

## D.   *Individual Defendants*

Defendants assert that all of Plaintiff's claims against Thaler, Wathen, and Carroll should be dismissed because Plaintiff makes no specific allegations against those defendants.[4]  (MSJ Br. at 13-14.)  Plaintiff asserts that "[e]ach Defendant had either the authority to personally correct the deprivation or the responsibility to see that someone in authority did make the necessary corrections."  (Second Resp. at 9.)

"In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."  *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).  A "causal connection may be established, for section 1983 purposes, where the constitutional

---

[4]In *Defendants' Reply to Plaintiff's Second Response to Their Motion for Summary Judgment*, Defendants requests summary judgment be granted on behalf of each individual defendant due to the absence of specific allegations or lack of evidence against each.  (Second Reply at 3-6.)  However, as these arguments were not made in the motion for summary judgment, they are not properly before the Court and will not be considered.  *See John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir.1987) (holding that it is error for court to grant summary judgment on ground not properly raised); *Z-Tel Communications, Inc. v. SBC Communications, Inc.*, 331 F. Supp.2d 513, 539 (E.D. Tex., 2004) ("It is a basic tenet of civil procedure that reply briefing may only respond to the allegations raised in the nonmovant's response."); *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp.2d 928, 936 n.9 (N.D. Tex., 2001) (holding that court will not consider on summary judgment a new argument raised in a reply brief); *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D. Tex. 1990) (same); *Winterthur Intern. American Ins. Company v. Bridgestone/Firestone, Inc.*, 2003 WL 21281736, *1 (N.D. Tex., May 27, 2003) (holding that the Court will not consider new grounds raised for the first time in a reply brief).

deprivation and practices occur as a result of the implementation of the [official's] affirmative wrongful policies by his subordinates, or where the [official] wrongfully breaches an affirmative duty specially imposed upon him by state law, and as a result thereof, the complained of constitutional tort occurs." *Jones v. Lopez*, 262 F. Supp.2d 701, 705 (W.D. Tex., 2001) (quoting *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

### 1.    <u>Thaler</u>

Defendant states that the claims against Thaler, the Chairman of the State Classification Committee, should be dismissed because Plaintiff does not allege that Thaler had any personal involvement in the alleged deprivations of Plaintiff's constitutional rights.   (MSJ Br. at 13.) Plaintiff's complaint describes the acts or omissions alleged to have been committed by Thaler as "8th Amendment violation - denial of adequate medical attention."   (Compl. at 3.)   Plaintiff's response to the motion for summary judgment notes that "Thaler was the department head (Chairman of State Classification Committee)."   (Second Resp. at 8.)   No other specific allegation are made by Plaintiff against Thaler.

Plaintiff has failed to establish any facts which indicate Thaler was personally or directly involved in any acts that allegedly caused the deprivation of Plaintiff's constitutional rights.  Plaintiff does not allege that Thaler personally participated in the acts complained of or that he promulgated a policy that caused the alleged constitutional violations.   Because Plaintiff has not shown the existence of a causal connection between any acts by Thaler and any alleged constitutional violations, he has not met his summary judgment burden.   Therefore, the Court concludes that Thaler is entitled to summary judgment on all of Plaintiff's claims against him.   Accordingly, summary judgment will be **GRANTED** to Thaler.

2.    **Wathen**

Defendant states that the claims against Wathen, a warden, should be dismissed because Plaintiff does not allege that Wathen had any personal involvement in the alleged deprivations of Plaintiff's constitutional rights.  (MSJ Br. at 13.)  Plaintiff's complaint describes the acts or omissions alleged to have been committed by Wathen as "8th Amendment violation - cruel & Unusual punishment."  (Compl. at 3.)  In his response to the motion for summary judgment, Plaintiff's notes that "Wathen [was] the signature authority on the Step 1 grievances and [was], therefore, put on notice that [Plaintiff] was being deprived of prescribed medication." (Second Resp. at 8.)  Plaintiff elaborates by stating that "[s]pecifically, ... Wathen... [was] either personally responsible for depriving [Plaintiff] of prescribed medications, knowledgeable of the deprivation and of the actual pain and harm caused to [Plaintiff] by the deprivation, and of the real potential for future pain and harm if no corrective action was taken.  Specifically, ... Wathen ... [was] deliberately indifferent to the fact that [Plaintiff] was being deprived of prescribed medication." *Id.*  The evidence before the Court shows that Wathen's signature appears as the "signature authority" on several of Plaintiff's grievance forms.  (MSJ Br., Exh. D at 8, 32, 36, 48.)

It is notable that Wathen has not submitted an affidavit denying that he had personal knowledge of the alleged deprivations.  The evidence shows that Wathen's signature in support of the administration's decision that no action was warranted is affixed to several of Plaintiff's grievances. (MSJ Br., Exh. D at 8, 32, 36, 48.)  This is some evidence suggesting that Wathen was aware of the alleged deprivations of Plaintiff's rights and failed to take any action to remedy the allegedly continuing deprivations.  *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994) (concluding that a corrections official was personally involved in the deprivation of an inmate's constitutional rights when he approved false disciplinary charges against the  inmate and upheld a

decision to take no action on a grievance); *Phillips v. Caldwell*, 1992 WL 82325, *2 (7th Cir. Apr. 23, 1992) (noting that an official's signature on a document provided some evidence linking the official to the complained-of behavior).  The evidence submitted raises a genuine issue as to whether Wathen, as the signature authority on Plaintiff's grievance forms, knew of the risks of lapses in Plaintiff's medication and whether, in spite of such knowledge, Wathen did not take appropriate steps to prevent such lapses.

Accordingly, the Court finds that Plaintiff has sufficiently alleged that Wathen had personal involvement in the alleged Eighth Amendment violation of denial of medical care.  As noted in section C(2)(a) above, the evidence presented establishes that there are genuine issues of material fact as to the deliberate indifference allegedly demonstrated by Defendants with respect to such alleged violation, including Wathen.  These fact issues preclude summary judgment.  Accordingly, summary judgment for Wathen is **DENIED**.

### 3. <u>Carroll</u>

Defendant states that the claims against Carroll, a grievance investigator, should be dismissed because Plaintiff does not allege that Carroll had any personal involvement in the alleged deprivations of Plaintiff's constitutional rights.  (MSJ Br. at 14.)  Plaintiff's complaint describes the acts or omissions alleged to have been committed by Carroll as "denial of prescribed medication." (Compl. at 3a.)  Plaintiff's response to the motion for summary judgment notes that "Carroll was the grievance investigator on each of [Plaintiff's] grievances ... and [was], therefore, put on notice that [Plaintiff] was being deprived of prescribed medication." (Second Resp. at 8.)  Additionally, Plaintiff states that "Carroll ... [was] either personally responsible for depriving [Plaintiff] of prescribed medications, knowledgeable of the deprivation and of the actual pain and harm caused to [Plaintiff] by the deprivation, and of the real potential for future pain and harm if no corrective action was taken.

Specifically, ... Carroll ... [was] deliberately indifferent to the fact that [Plaintiff] was being deprived of prescribed medication." *Id.*  The evidence before the Court shows that Carroll is listed as the grievance investigator on all of Plaintiff's step one grievance forms.  (MSJ Br., Exh. D at 3, 7, 11, 15, 19, 23, 27, 31, 35, 39, 43, 47.)  As with Wathen, this is some evidence suggesting that Carroll was aware of the alleged deprivations of Plaintiff's rights and failed to take any action to remedy the allegedly continuing deprivations.  *See Black*, 22 F.3d at 1401; *Phillips*, 1992 WL 82325 at *2.

Accordingly, the Court finds that Plaintiff has sufficiently alleged that Carroll had personal involvement in the alleged Eighth Amendment violation of denial of medical care.  As noted in section C(2)(a) above, the evidence presented establishes that there are genuine issues of material fact as to the deliberate indifference allegedly demonstrated by Defendants with respect to such alleged violation, including Carroll.  The evidence submitted raises a genuine issue as to whether Carroll knew of the risks of lapses in Plaintiff's medication and whether, in spite of such knowledge, Carroll did not take appropriate steps to prevent such lapses.  These fact issues preclude summary judgment. Accordingly, summary judgment for Carroll is **DENIED**.

## VII.   CONCLUSION

The summary judgment evidence presented in this case establishes that there are no genuine issues of material fact with regard to Plaintiff's claim involving medical care procedures in administrative segregation or with regard to his claim of improper shower ventilation.  Therefore, Defendants are entitled to summary judgment on these claims as a matter of law.   Additionally, the Court finds that there are no genuine issues of material fact with regard to Plaintiff's claims against Defendant Thaler.

27

However, the evidence presented establishes that there are genuine issues of material fact as to Plaintiff's claim of denial of medical care.  Accordingly, Defendants are not entitled to summary judgment on this claim.

Defendants did not move for summary judgment on Plaintiff's claims of pepper spray exposure, medically safe transportation, inadequate clothing, inadequate medical records, and destruction of medical records.  Consequently, these claims remain pending before the Court.

For the foregoing reasons, Plaintiff's claims for monetary damages against Defendants in their official capacity are hereby **DISMISSED without PREJUDICE** for lack of subject matter jurisdiction under Rule 12(b)(1) and Rule 12(h)(3).  Defendants' motion for summary judgment is **GRANTED, in part,** and Plaintiff's claims involving medical care procedures in administrative segregation and improper shower ventilation are hereby **DISMISSED with PREJUDICE**.  In addition, all claims brought against Defendant Thaler are hereby **DISMISSED with PREJUDICE**.

SO ORDERED, this 27th day of June, 2005.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE